IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2016 Session

**STATE OF TENNESSEE v. TERRANCE STEPHENY**

**Appeal from the Criminal Court for Shelby County**
**No. 13-05704     Chris Craft, Judge**

---

**No. W2015-01787-CCA-R3-CD  -  Filed September 30, 2016**

---

The defendant, Terrance Stepheny, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony, and was sentenced by the trial court as a Range II, multiple offender to seventeen years in the Department of Correction.  On appeal, the defendant challenges the sufficiency of the evidence and argues that the trial court imposed an excessive sentence by not sentencing him at the lower end of his range.  Following our review, we affirm the judgment of the trial court but remand for entry of a corrected judgment to reflect the defendant's conviction offense as aggravated robbery, which was omitted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Carlissa Shaw, Memphis, Tennessee, for the appellant, Terrance Stepheny.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

According to the State's proof at trial, on March 2, 2012, the victim, Lerricas Barnes, was on his lunch break at the Memphis Chinese restaurant where he worked when the defendant came into the restaurant with two companions, one of whom offered the victim a gun for sale.  When the victim stepped outside to look at the gun, the man

held him at gunpoint while the defendant searched the victim's pockets and took approximately $300 in cash. The defendant was subsequently indicted for the aggravated robbery of the victim and tried before a Shelby County jury from April 29-May 1, 2015.

At trial, the victim, who acknowledged he had a 2014 conviction for theft over $1000, testified that he was eating lunch at the restaurant with a friend on March 2, 2012, when the defendant came in with two friends. He said he had known the defendant from the neighborhood for the past two years but knew him only by his nickname, "T-head." The victim stated that when one of the defendant's friends told him he had a gun for sale, he stepped outside to look at the gun. However, as the man was showing him the .9 millimeter weapon, he suddenly put the gun in the victim's face. At about the same time, the defendant and his second friend, a man with braids, came up behind the victim. The victim said he felt in fear for his life and held up his hands. The gunman told the defendant to get his money, and the defendant reached into the victim's pocket and took his cash, which totaled approximately $300. The defendant and the man with braids then fled, while the gunman fired a couple of shots into the air before running off as well.

The victim testified that he walked to his grandmother's house eight to ten minutes away to call the police because the manager of the Chinese restaurant told him she did not "want no indications (sic) going on in her restaurant[.]" When the police arrived, he showed them the house where he thought the defendant lived, but they did not find the defendant there. The victim identified the photographic spreadsheet from which he had identified the defendant to police on March 6, 2012, as the man who "went into [his] pocket while a light skin[ned] dude pulled a gun on [him]." He also made a positive courtroom identification of the defendant. He said he did not recognize the defendant's two companions and had not seen either of them since the robbery.

On cross-examination, the victim acknowledged that the Chinese restaurant was located in "a relatively busy area" surrounded by a number of other businesses. He said several people who were in the next-door barbershop, as well as the woman who ran the restaurant, came outside when they heard the gunshots. He testified he told the manager of the restaurant what had happened, but she did not want any "mess" in her restaurant or for him to work for her after that date. The victim acknowledged that he did not provide the name of his friend to the officer who responded or take the officer to the barbershop to talk to the potential witnesses. He further acknowledged that he had failed to show for a preliminary hearing in the case. The victim explained that he was not angry at the defendant but, instead, at the man who held a gun to his face.

Memphis Police Officer Steven Easterwood testified that the victim provided him with the nickname "T-head" for one of the perpetrators and "T-head's" possible residence. He said he and his fellow officers went to that residence, knocked on the door,

2

and spoke with a "very combative" woman who would not reveal her identity or allow them entry into the home. On cross-examination, Officer Easterwood acknowledged that, according to his report, the victim told him that "T-head" had motioned him outside to the parking lot of the Chinese restaurant, located at 1420 Jackson Avenue, where another man came up and pointed a gun at him. He could not recall the victim's having mentioned anything about a gunshot.

Sergeant Velynda Thayer of the Memphis Police Department testified that she was eventually able to connect the nickname "T-head" with the defendant. She then prepared a six-person photographic spreadsheet with the defendant's picture, from which the victim positively identified the defendant as the person who robbed him. Although she did not state it in her supplement, she was confident that she would have investigated whether there were any surveillance cameras or other useful information in the robbery location and, because she did not document it, she did not believe that there were any present.

On cross-examination, Sergeant Thayer testified that the victim told her three people were involved in the robbery and that he knew one of them from the neighborhood by the nickname of "T-head." She said she was never informed of any potential witnesses or that there were any citizens who responded to the gunshots. She stated that she never went into the restaurant or talked to the restaurant owner because the incident did not occur inside the restaurant, but instead outside in the back of the building. The victim did not tell her that he worked at the restaurant. Finally, she reiterated that she was certain she would have driven around the location to search for surveillance cameras and the fact that she did not document any meant that they did not exist. On redirect examination, Sergeant Thayer testified that the victim reported in his statement that "shots were fired in the air."

Lynsey Hunt, an investigator with "Inquisitor," testified on the defendant's behalf that she had gone to the area of the crime the previous day and observed a large sign at 1420 Jackson Avenue stating that the premises were under twenty-four-hour surveillance, three surveillance cameras at the barbershop next door, and four to five surveillance cameras at the business on the other side of 1420 Jackson Avenue. Ms. Hunt identified photographs she had taken of the warning sign at 1420 Jackson Avenue and the surveillance cameras she observed at 1422 and 1414 Jackson Avenue, which were admitted as exhibits and published to the jury. She stated that she had visited the area at the noon hour and found it to be very busy with "lots of traffic in and out."

On cross-examination, Ms. Hunt acknowledged that she had no knowledge of what the area looked like in March 2012. She further acknowledged that the Chinese restaurant was no longer in business.

The defendant elected not to testify and rested his case without presenting any further evidence. Following deliberations, the jury convicted him of the indicted offense of aggravated robbery.

At the sentencing hearing, the State introduced certified copies of judgments to show that the defendant had four prior Class C felony convictions for the sale of a controlled substance: one with an offense date of November 4, 2009; two with the offense dates of November 6, 2009, and one with an offense date of November 10, 2009. The State also introduced the defendant's presentence report, which reflected, among other things, that the defendant had no work history, had a number of prior misdemeanor and felony convictions, and was on probation when he committed the instant offense.

Defense counsel conceded that the defendant qualified as a Range II offender based on his prior Class C felony drug convictions. He argued, however, that the trial court should sentence the defendant at the lower end of the range because the qualifying felonies occurred in such close proximity in time to each other. He also argued that the trial court should apply as mitigating factors the defendant's "tumultuous" family history and the fact that the defendant played only a minor role in the offense.

At the conclusion of the hearing, the trial court found that the defendant was a Class II offender based on the November 4 and November 10, 2009 Class C felony drug convictions and that the two additional November 6, 2009 Class C felony drug convictions could be used to enhance his sentence within the range. The trial court applied the following enhancement factors: the defendant's previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range; the defendant's previous history of unwillingness to comply with the conditions of a sentence involving release into the community, and the fact that the felony was committed while the defendant was on probation. See Tenn. Code Ann. § 40-35-114(1), (8), (13)(C) (2014). The trial court found no applicable mitigating factors. Accordingly, the trial court sentenced the defendant as a Range II, multiple offender to seventeen years in the Department of Correction at 85% release eligibility as a violent offender.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant contends that the evidence is insufficient to sustain his conviction, arguing that the victim's testimony was unconvincing and that the State provided no corroborating evidence to support his account of an armed robbery. The State responds by arguing that the defendant has not identified any significant inconsistencies in the

4

victim's testimony, that witness credibility was a question for the jury to determine, and that the victim's testimony, alone, was sufficient to support the conviction.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The State charged the defendant with aggravated robbery under a theory of criminal responsibility. For the purposes of this case, aggravated robbery is defined as "the intentional or knowing theft of property from the person of another by . . . putting the person in fear" that is "[a]ccomplished with a deadly weapon[.]" Tenn. Code Ann. §§ 39-13-401(a), -402. A person is criminally responsible for the actions of another if,

5

"[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Id. § 39-11-402(2). Criminal responsibility is not a separate crime but "is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Viewed in the light most favorable to the State, the evidence establishes that the defendant brought two friends with him to the victim's workplace, one of whom indicated that he had a gun to sell. When the victim stepped outside to the back of the restaurant to look at the item, the man pointed the gun at the victim's face, causing him to fear for his life. The gunman then directed the defendant to take the victim's money from his pockets. The defendant searched the victim's pockets and took approximately $300 from the victim before fleeing with one of his companions while the gunman stayed behind long enough to fire gunshots in the air before fleeing himself. This evidence was sufficient for the jury to find the defendant guilty of the aggravated robbery of the victim under a theory of criminal responsibility.

We agree with the State that the defendant's cited inconsistencies in the victim's testimony, such as the victim's failure to inform Sergeant Thayer that he was at work at the time the robbery occurred or of the existence of potential witnesses, did not significantly detract from his essential account of the crime, which remained consistent throughout his statements to the officers and his trial testimony. We further agree that it was within the jury's province to determine the victim's credibility and that the victim's testimony, alone, was sufficient for the jury to find the defendant guilty of the crime. Accordingly, we affirm the defendant's conviction for aggravated robbery.

## II. Sentencing

The defendant also contends that the trial court imposed an excessive sentence, arguing that, while his record "does require him to be sentenced as a range two offender," the trial court should have sentenced him "at the beginning of the range" because the prior felonies on which the trial court relied in finding him a multiple offender occurred within a very short span of time. The State argues that the defendant is not entitled to any relief because the trial court appropriately sentenced the defendant to a within-range sentence that was consistent with the purposes and principles of the Sentencing Act. We, again, agree with the State.

The defendant concedes that he has the prior qualifying felonies to be classified as a Range II multiple offender. The multiple offender statute provides that "[a] defendant who is found by the court beyond a reasonable doubt to be a multiple offender *shall*

6

receive a sentence within Range II." Tenn. Code Ann. § 40-35-106(c) (emphasis added). The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). We, therefore, review this issue under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

The record reflects that the trial court properly considered the relevant purposes and principles of the Sentencing Act and imposed a sentence within the applicable multiple offender range for the defendant's Class B felony offense of aggravated robbery. Accordingly, we find no abuse of discretion in the sentence imposed by the trial court and affirm the seventeen-year sentence.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE